**Joseph H. PINKETT, Defendant Below, Appellant,**

v.

**Steven L. BRITTINGHAM and Carla Brittingham, his wife, Plaintiffs Below, Appellees.**

Supreme Court of Delaware.

Submitted: Sept. 6, 1989.
Decided: Dec. 11, 1989.
Rehearing Denied Jan. 2, 1990.

Richard P.S. Hannum and Stephen L. Nowak, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellant.

Stephen B. Potter, Potter, Spiller, Crosse & Leonard, Wilmington, for appellees.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice:

In this appeal from an adverse jury award in the Superior Court, the defendant-appellant, Joseph H. Pinkett ("Pinkett"), alleges three erroneous rulings by the trial judge as the basis for reversal of the verdict. He contends that the trial judge improperly commented on the evidence in his instructions to the jury, permitted the question of insurance to be raised during *voir dire*, and allowed the plaintiff Steven L. Brittingham ("Brittingham")[1] to call Pinkett's medical expert as plaintiff's witness over Pinkett's objection. We find no error in the language of the instruction or in the court's ruling permitting the plaintiff to call the opposing party's expert medical witness. We conclude, however, that it was erroneous, as a matter of law, to engage in *voir dire* of the jury on the question of insurance. Accordingly, we reverse as to that point and remand for a new trial.

## I

Brittingham's claim for personal injuries arose out of an automobile accident that occurred at an intersection in Wilmington on December 25, 1985. Brittingham was a passenger in a vehicle that was struck by a vehicle operated by Pinkett. Liability was not in serious dispute and, at trial, a directed verdict was entered as to Pinkett's negligence. Thus, the sole issue for jury determination was the cause and extent of Brittingham's injuries.

At trial, Brittingham claimed to be totally disabled from working in any capacity as a result of the December 25, 1985 accident. Although there was no direct evidence of any subsequent accident, Pinkett's defense focused attention on certain inconsistencies in Brittingham's post-accident conduct in an effort to suggest another cause. In particular, the defense presented evidence that Brittingham completed two applications for disability insurance benefits that listed "November 15, 1986" as the date

when his symptoms first appeared. This discrepancy was explained at trial by Carla Brittingham, who testified that because of her husband's limited learning ability she completed the insurance forms and mistakenly entered the wrong date.

At Pinkett's request, the trial judge agreed to instruct the jury concerning the subsequent accident defense. He did so in the following language:

> [W]here the testimony shows that one of two things may have occasioned the injury, for one of which the defendants were responsible and for one of which defendant was not responsible, you cannot find for Steven Brittingham or any of the plaintiffs—or any of the plaintiffs if it is just as probable that that particular plaintiff's injury was caused by one as by the other. In other words, the defendant contends that there is *some* evidence in this case to indicate that subsequent to December 25, 1985, Steven Brittingham was involved in another accident which did not involve the present defendant."

(Emphasis added).

Pinkett's counsel noted a timely objection to this instruction, arguing that the court's use of the modifier "some" did not "accurately express the defendant's contention." Pinkett renews that argument on appeal, asserting that the trial judge's characterization constituted a comment on the weight of the evidence in violation of article IV, § 19 of the Delaware Constitution.[2]

■ Pinkett argues that it was his contention at trial that the evidence established the fact of a subsequent accident while the trial judge's use of the word "some" conveyed to the jury the court's evaluation of a lesser quantum of evidence. We believe that this claim is grounded in mere semantics. Given the evidentiary basis for the subsequent accident defense, the instruction, considered in its entirety, was not misleading. *Probst v. State*, Del.Supr.,

---

1. Although Brittingham's wife, Carla, was also a party-plaintiff, seeking recovery for loss of consortium, Brittingham will be referred to as the plaintiff, unless otherwise specifically noted.

2. § 19. **Instructions to jury.**

Section 19. Judges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law.

547 A.2d 114, 119 (1988) (quoting *Baker v. Reid,* Del.Supr., 57 A.2d 103, 109 (1948)).

Contrary to Pinkett's assertion, the evidence of a subsequent accident was not factually established beyond dispute. There was no direct evidence of a subsequent accident and Brittingham denied receiving a subsequent injury. Pinkett's entitlement to a charge on subsequent accident was based on the adverse inferences to be drawn from the course of Brittingham's disability and the mistaken date in the insurance applications. These events were consistent with the theory of subsequent accident but were also subject to explanation. The use of the phrase "some evidence" to describe these events does no more than indicate that the evidence does not absolutely establish the fact of subsequent accident, even as a matter of contention. When read in its entirety, the charge does not convey, directly or indirectly, "the court's estimation of the truth, falsity or weight of the testimony in relation to a matter at issue." *State v. Carey,* Del.Super., 178 A. 877, 883 (1935). We find no error in the instruction.

## II

Pinkett's next claim of error concerns the trial judge's ruling that permitted Brittingham to call a medical expert retained by Pinkett as plaintiff's witness. Prior to trial, Pinkett requested a medical examination of Brittingham and designated Dr. Alan Fink, a neurologist, to conduct the examination. Dr. Fink performed the examination and sent a report of his findings and conclusions to Pinkett's counsel. As required by Superior Court Civil Rule 35(b), a copy of this report was also provided to Brittingham's counsel. Both parties subpoenaed Dr. Fink to appear at the same time and date to testify at trial. Early in the trial, however, Pinkett cancelled his subpoena and decided not to call Dr. Fink as a witness. In contrast, Brittingham's counsel advised the court that he intended to proceed with Dr. Fink as one of plaintiff's expert medical witnesses. Over Pinkett's objection, the trial judge permitted Dr. Fink to testify on behalf of the plaintiff,

with his testimony limited to the contents of his earlier written report to counsel.

■ Pinkett argues that permitting a party to compel the testimony of an opposing party's expert witness interferes with the attorney-client privilege, promotes involuntary servitude of the witness and creates an ethical dilemma for the subpoenaed expert. While such concerns may arise in other situations, they are not present here. Since Dr. Fink voiced no objection to appearing as plaintiff's witness it may be assumed that he perceived no ethical restriction on doing so. When Dr. Fink agreed to examine Brittingham, he did so as an independent medical practitioner and was not in the employ of Pinkett or his insurer. Under the requirement of Rule 35(b), Dr. Fink was required to share the results of his examination with plaintiff and his counsel. Where, as here, an examining physician's trial testimony is limited to the contents of his report, the decision to compel his appearance at the behest of the opposing party is a discretionary one that may turn on the "interests of fairness." *Fitzpatrick v. Holiday Inns, Inc.,* E.D.Pa., 507 F.Supp. 979, 980 (1981).

We are not persuaded that the decisional authority relied upon by Pinkett bars the calling of an opposing party's expert witness under the limitations imposed by the trial judge in this case. In *State ex rel. State Highway Department v. 69.96247 Acres of Land, More or Less, in New Castle Hundred, New Castle County,* Del.Super., 193 A.2d 799 (1963), the court's refusal to permit the opposing party to call as a witness a real estate appraiser previously employed by the State was based on the extent of the witness's role in the planning and presentation of the case. The relationship between witness and counsel had extended far beyond that of a fact witness to the point where the expert might be considered "assistant counsel." 193 A.2d at 811.

Equally distinguishable are two unreported Superior Court decisions in which a medical expert retained by an opposing party was barred from testifying regarding the standard of care in a medical malprac-

tice case. *Schmidt v. Hobbs*, Del.Super., C.A. No. 85C–OC–135, 1988 WL 31989, Babiarz, J. (Mar. 17, 1988); *Starkey v. Hunt–Madani Professional Assocs.*, Del.Super., C.A. No. 84C–SE–50, 1988 WL 33561, Gebelein, J. (Mar. 31, 1988). Neither case involved an examination and report under Superior Court Rule 35(b) and thus neither may be read as authority for preventing the calling of a medical expert who performs an independent medical examination of the party seeking to call him. Similarly, in *State v. McLaughlin*, Del.Super., 514 A.2d 1139 (1986), it was correctly determined that an expert who had no knowledge of the facts at issue was not a material witness whose expert testimony could be compelled.

We conclude that the ruling of the trial judge permitting Dr. Fink to testify as plaintiff's witness did not constitute an abuse of discretion under the circumstances presented.

### III

■ Pinkett's final claim of error is directed to a jury *voir dire* question propounded by the trial judge at Brittingham's request. That inquiry, made to the entire jury panel, was as follows:

Are you or any member of your family an insurance agent, adjuster, field claim representative or an insurance company supervisor?

Counsel for Pinkett objected to the giving of the special *voir dire* question because it "accentuates the issue of insurance particularly in view of the fact that the question appears on the jury questionnaire."

In *Chavin v. Cope*, Del.Supr., 243 A.2d 694 (1968), this Court upheld the refusal of a trial judge to ask certain questions of prospective jurors concerning their association with the casualty insurance business. The trial judge refused to direct such questions even though the plaintiff further requested that the trial judge make it clear to the panel that the asking of the questions did not imply that the defendant was insured or that the matter of insurance, or lack thereof, was to be considered by the jury. In *Chavin* this Court noted that "[i]t

has long been the rule in Delaware that mention of liability insurance in an automobile collision case is prejudicial to the defendant." *Id.* at 696. While it was noted that the mere mention of insurance during trial does not *ipso facto* justify the granting of a mistrial, particularly if such reference may be cured through an appropriate instruction, the presentation of an insurance question in *voir dire* presents a different problem:

The requested procedure, in advance of the drawing of the trial jury, it seems to us, differs sharply from the inadvertent blurting out by a witness of the fact of insurance coverage. The latter prejudice may well be cured by an appropriate instruction. At the outset of a trial, however, for the judge to question the jurors in a manner designed to bring out the prejudicial fact of insurance coverage of the defendant is an entirely different matter. Irrespective of whether or not the requested instruction would cure any prejudicial effect, the trial judge should not, by his own action, introduce a possible prejudicial fact into the jurors' minds.

*Id.* at 697.

The *Chavin* court also recognized that jury *voir dire* on the question of insurance may be subject to greater latitude in other jurisdictions, particularly where counsel are permitted to engage in extensive questioning of prospective jurors. Notwithstanding those practices, the Court rejected the holding in *Kiernan v. Van Schaik*, 3d Cir., 347 F.2d 775 (1965), which reversed a trial judge's refusal to propound specific insurance questions, adopting instead the holding of the Fourth Circuit in *Langley v. Turner Express, Inc.*, 4th Cir., 375 F.2d 296 (1967). In *Langley*, the Court stated:

We must strike a balance between the probability of danger to plaintiffs that someone sympathetic to insurance companies may remain on the jury and the danger to defendant that the jury may award damages without fault if aware that there is insurance coverage to pay the verdict. We think the latter danger is greater than is the former, and are not

persuaded otherwise by *Kiernan v. Van Schaik*, 347 F.2d 775 (3rd Cir.1965). *Id.* at 297.

We believe it significant that in *Chavin* this Court recognized the desirability of knowledge of a prospective juror's connection with an insurance company and suggested that the Superior Court expand the standard juror questionnaire to require broader disclosure in this area. Since that time the Superior Court has modified the juror questionnaire so that, at present, specific information concerning possible juror employment by or ownership in accident or casualty insurance companies is elicited.[3]

Brittingham argues that the use of the insurance inquiry was within the discretionary power of the trial judge to determine juror bias. As *Chavin v. Cope* makes clear, requests for specific juror *voir dire* inquiries are "addressed to the discretion of the trial judge." *Id.* at 697. On review, unless an abuse of discretion is shown, the decision to grant, or decline to grant, a specific request will not be disturbed. *Chavin*, of course, involved the refusal to ask certain insurance questions. Nevertheless, it clearly held that the asking of insurance questions by the trial judge creates an air of prejudice that cannot be cured by supplemental instruction. This holding represents a legal standard that cannot now be ignored, particularly in the light of the subsequent modification of the jury questionnaire to supply information of possible juror bias. In short, a post-*Chavin* insurance affiliation inquiry in jury *voir dire* serves no purpose except to alert the jury to the presence of insurance, to the obvious detriment of the defendant. When so viewed, the inquiry in this case constitutes an abuse of discretion.

In an effort to distinguish the clear impact of *Chavin*, Brittingham contends that with the adoption of mandatory insurance in Delaware and the use of a standard jury instruction regarding the effect of the Personal Injury Protection (PIP) benefits in a suit against a tortfeasor, jurors are already aware of the presence of insurance in a trial. The standard jury instruction regarding receipt of PIP benefits, however, addresses a plaintiff's no-fault insurance, which is not tort related, and does not suggest the presence of insurance as a source of recovery for damages awarded. Nor has the advent of mandatory insurance relaxed the stricture against jury *voir dire* questioning on the presence of insurance. This Court recognized the continued vitality of *Chavin's* holding long after the 1971 passage of 21 *Del.C.* § 2118, Delaware's mandatory insurance law. *Coe v. Schneider*, Del.Supr., 424 A.2d 1 (1980).

■ Finally, we find no merit in Brittingham's contention that Pinkett has waived any error in *voir dire* by referring during the trial to Brittingham's completion of disability insurance applications. There is no suggestion that these applications were executed at the behest of Pinkett's insurance carrier and thus, like the receipt of PIP benefits, they do not reflect the presence of liability insurance or otherwise blunt the effect of *Chavin's* recognition of the need for the trial judge to avoid lending his prestige to the question of insurance.

Under the circumstances of this case, we are compelled to conclude that the asking of the insurance question on jury *voir dire*, over the objection of the defendant and in view of clearly settled decisional law to the contrary, constituted an abuse of discretion. The record provides no basis for a conclusion that the resulting prejudice was harmless.

Accordingly, the judgment of the Superior Court is reversed and the matter is remanded for a new trial limited to the

---

**3.** The following questions appear on the Superior Court Jury Qualification Form:

7. Have you ever been or do you have a close friend or relative who is or was employed by an insurance or claims adjustment company? If yes, specify:

8. Are you a stockholder in an insurance company which issues accident or casualty insurance?

The form must be completed by all persons considered for jury service and is available for examination by any party to litigation. 10 *Del.C.* § 4513(a).

issue of damages, the only issue that involved jury participation.