William F. WINCHESTER, Jr., Amy Winchester and Thomas Z. (Zack) Winchester, Plaintiffs,

v.

Frederick W. HERTRICH, III, Harriett Davis Hertrich and Christopher Hertrich, Defendants and Third–Party Plaintiffs,

v.

William F. WINCHESTER, Jr., Amy Winchester, as guardians for William F. Winchester, III and Charles M. Winchester, Third–Party Defendants.

Thomas GUHL and Dana Lee Guhl, Plaintiffs,

v.

The MEDICAL CENTER OF DELAWARE, Defendant.

Civ. A. Nos. 92C–04–104, 92C–04–43.

Superior Court of Delaware, New Castle County.

Submitted: January 17, 1995.

Decided: February 2, 1995.

Carl Schnee, of Prickett, Jones, Elliott, Kristol & Schnee, for plaintiffs and third-party defendants William F. Winchester, Jr., et al.

James W. Semple and Joseph R. Slights, III, of Morris, James, Hitchens & Williams, for defendants and third-party plaintiffs Frederick W. Hertrich, III, et al.

Paul A. Wernle, Jr., of Tomar, Simonoff, Adourian & O'Brien, for plaintiffs Thomas and Dana Lee Guhl.

Edward A. Tarlov, of Elzufon, Austin & Drexler, P.A., for defendant the Medical Center of Delaware.

## OPINION

HERLIHY, Judge.

Presently before the Court are two motions relating to the extent to which, if any, expert witnesses originally retained by one party can be utilized by the opposing party. While certain issues are shared by these two motions, there are material procedural and factual differences which need to be mentioned.

## FACTS

In *Winchester*, the instant motion is one to compel an examining physician to attend and answer questions at a deposition. The underlying action is one for personal injuries wherein the plaintiff [1] suffered loss of sight in one eye when hit by a BB shot on January 28, 1991.

Dr. Lov K. Sarin, licensed to practice only in Pennsylvania, examined plaintiff on behalf of defendants on November 13, 1992. He addressed a report regarding his examination and findings to defense counsel. That report has been supplied to plaintiff's counsel pursuant to Superior Court Civil Rule 35.[2] Subsequently, plaintiff's counsel noticed Dr. Sarin for a deposition.

Defense counsel responded by indicating that he was not calling Dr. Sarin as a witness at trial. Plaintiff's counsel, in turn, responded by saying that under Delaware law, he could call Dr. Sarin as his witness at trial and wanted to proceed with a trial deposition. The reply by defense counsel was that Dr. Sarin had been hired only for the defendants and was unwilling to testify for the plaintiff.

Attached to the defendants' response to the motion to compel is an affidavit from Dr. Sarin. He states that he agreed to examine the plaintiff and that if the defendants did not want him at trial, he would not testify for

the plaintiff. Dr. Sarin objects to being deposed and to appearing at trial.

In *Guhl*, a malpractice case, the defendant had Dr. Alan Fink examine plaintiff Thomas Guhl. Dr. Fink, too, supplied a report pursuant to Rule 35. Unlike *Winchester*, however, in a letter, answers to interrogatories and two separate pretrial stipulations, the defendant has listed Dr. Fink as a trial witness. However, the defendant has now indicated it will not use Dr. Fink at trial.

The plaintiffs want to use Dr. Fink in relation to an issue of leg numbness. The defendant points out that plaintiffs have an expert on that issue. Defendant resists plaintiffs' effort to call Dr. Fink as their trial witness.

## DISCUSSION

### Winchester

Plaintiff argues that *Pinkett v. Brittingham*, Del.Supr., 567 A.2d 858 (1989) permits him to depose Dr. Sarin and call him as his witness at trial. In *Pinkett*, Dr. Alan Fink performed an "independent" medical examination of the plaintiff on behalf of the defendant. Dr. Fink supplied a report pursuant to Rule 35. Both sides subpoenaed him but the defense withdrew its subpoena. Over the defendant's objection, the trial court allowed the plaintiff to call Dr. Fink but confined his testimony to his report. *Id.* at 860.

In upholding the trial court's decision, the Supreme Court noted that Dr. Fink did not object to testifying for the plaintiff. The Court further noted Dr. Fink was not employed by the defendant or his insurer.[3] The Court noted the decision to enable plaintiff to use Dr. Fink was discretionary that may implicate the interests of fairness. *Pinkett*, 567 A.2d at 860.

In this case, the defendants note that Dr. Sarin not only objects to appearing for the

---

1. The primary plaintiff is a minor and all references hereafter will refer to plaintiff.

2. If requested by the party against whom an order is made under Rule 35(a) or the person examined, the party causing the examination to be made shall deliver to the requesting party a copy of the detailed written report of the examiner setting out the examiner's findings,

including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition. Superior Court Civil Rule 35(b)(1).

3. The record is unclear just how the defendant obtained Dr. Fink and under what eleemosynary auspices he examined the plaintiff and testified.

plaintiff but originally agreed to perform his examination only if he testified for the defendant. Unlike Dr. Fink's position in *Pinkett,* Dr. Sarin objects to testifying for the plaintiff. Also, unlike *Pinkett,* Dr. Sarin was in the employ of defense counsel and/or the defendant's insurer. The plaintiff vigorously protests this posture because he sees it as a subterfuge to evade the dictate of *Pinkett.*

However, there is an important threshold issue not present in *Pinkett.* The plaintiff's initial request of Dr. Sarin was to take his deposition. It was later changed to a trial deposition. Plaintiff's initial deposition request raises an issue of apparent first impression in Delaware.

Rule 35(b)(3) states:

This subdivision applies to examinations made by agreement of the parties, unless the agreement expressly provides otherwise. This subdivision does not preclude discovery of a report of an examiner or the taking of a deposition of the examiner in accordance with the provisions of any other Rule.

One of the other rules is Rule 26(b)(4)(B), which provides:

A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.[4]

These two rules must be read together: Rule 35(b)(3) now states that the existence of Rule 35(b) does not preclude the taking of a deposition of the physician in accordance with the provisions of any other rule. This must be read in the light of the restrictions imposed by Rule 26(b)(4). Even if there is no privilege barrier, that rule speaks directly to discovery of facts known and opinions held by experts. If a doctor is to be called at the trial, Rule 26(a)(2) requires disclosure of the basis for the testimony and the deposition of the doctor can be taken. If the doctor is not to be called at the trial, discovery from him or her, except for the report furnished under Rule 35(b), can be had only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

8A Wright, Miller & Marcus, *Federal Practice and Procedure* (2d Ed.), § 2237 at 509–510 (1994).

Dr. Sarin has never been listed as a *trial* witness and trial is scheduled for June 26, 1995. The record is ambiguous, at best, that even though hired as a defense witness, whether he was hired as a consultation or trial expert. It is unclear from the case authorities whether that ambiguity is relevant. Certainly, Dr. Sarin was hired in anticipation of litigation. He was hired six months after the lawsuit was filed.

█ Plaintiff argues that the defendants have placed two impediments to further discovery, which, he argues, amount to an end run to *Pinkett* and liberal pretrial discovery. First, he says, the defendants have blocked discovery by employing an out-of-state expert. The record is devoid of any avoidance subterfuge which defendants have utilized by retaining a Pennsylvania doctor. While there may be some additional effort and expense in going to the doctor's office in Pennsylvania, this record does not show a defense effort to improperly circumvent discovery obligations by using a non-Delaware doctor.

Plaintiff's second complaint about the condition under which Dr. Sarin was hired is more troubling. Dr. Sarin is in possession of information which is potentially helpful to the truth-seeking process. Parties on either side, therefore, could curtail that process by engaging experts only on the condition that they testify for them and not party opponents. If this Court were to lend its imprimatur to this restriction in hiring an expert, the argument goes, pretrial discovery and

---

**4.** This case does not involve the discovery of employee experts who are not shielded by Rule 26(b)(4)(B). *Stafford v. Sears, Roebuck & Co.,* Del.Supr., 413 A.2d 1238, 1243 (1980).

the presentation of relevant evidence at trial are harmed.

 However, Rule 26(b)(4) clearly differentiates between pretrial discovery of testimonial experts and consultation experts. There is certainly an equally valid competing reason behind this distinction. Parties ought to be able to consult with experts and obtain their views. They should be shielded, within reason, from having to expose these consultation experts to the full panoply of pretrial discovery.

The Court is mindful that most physicians performing most physical examinations of the opposing party develop firsthand knowledge. They form opinions based on their direct observations of the opposing party. Further, most "IME" doctors do not usually get as involved in an attorney's work product as other physicians or experts might. Nor are "IME" doctors normally to be hired as consultation-only experts.

Rule 26(b)(4)(B) obviously is designed to foster consultations with experts and to some extent, shield attorney work product. However, while one of its policy underpinnings may be such, it draws the distinction based not on degree of involvement between counsel and expert but between testifying and consultation experts.

An expert who offers an opinion which the party who hired him or her does not like may find such a report helpful in fostering settlement. Perhaps there could be a non-substantive problem with the expert which causes a party not to want to use him or her at trial. Again, the engaging party should have these options, within reason and within the confines of "exceptional circumstances".

 In addition, the limitation on discovery of consultation experts helps prevent the abuse by one party of another party's pretrial preparation and resources. *Ager v. Stormont Hospital and Training School for Nurses*, 622 F.2d 496, 503 (10th Cir.1980); Wright & Miller, 8 *Federal Practice and Procedure* (2d Ed.), § 2032 at 444–45.

 Discovery of a consultation expert is permitted only under "exceptional circumstances". Rule 26(b)(4)(B); *Granger v. Wis-*

*ner*, 134 Ariz. 377, 656 P.2d 1238, 1242 (1982). The plaintiff has not shown or argued that exceptional circumstances exist. There is no indication he lacks an expert, that the defendants have cornered readily available experts, or any other recognized exceptional circumstances. As that issue is not before this Court at this time, what constitutes an exceptional circumstance is to be decided another day.

 Plaintiff has also sought to take Dr. Sarin's *trial* deposition. This request may be in recognition of the limitation of Rule 26(b)(4)(B) and/or to seek to align this case with *Pinkett* which involved use of a party opponent's expert witness at trial. Rule 26(b)(4)(B) is no longer implicated. *Fenlon v. Thayer*, 127 N.H. 702, 506 A.2d 319, 321 (1986). This Court has previously ruled that one party's expert, whom it is not calling as a witness, may not be compelled to testify. *Schmidt v. Hobbs*, Del.Super., C.A.No. 85C–OC–135, Babiarz, J. (March 17, 1988); *Starkey v. Hunt Madani Professional Assocs.*, Del.Super., C.A.No. 84C–SE–50, Gebelein, J. (March 31, 1988). To compel testimony of an expert would involve a form of involuntary servitude and create an ethical dilemma. *See State v. McLaughlin*, Del.Super., 514 A.2d 1139, 1142 (1986).

The Supreme Court in *Pinkett* distinguished *Schmidt* and *Starkey* by noting that Dr. Fink, in *Pinkett*, had performed an independent medical examination and supplied a report under Rule 35(b). What is unclear, however, by this latter distinction is that the plaintiffs in these two Superior Court cases, both malpractice, obviously knew through discovery that the defense experts had rendered reports favorable to plaintiff. *McLaughlin* was distinguished on the grounds that the witness had no knowledge of the facts and was not a material witness. *Pinkett*, 567 A.2d at 861.

What does clearly distinguish this case from *Pinkett* is the unwillingness of the expert to testify and the conditions of his employment. The discretion under Rule 26(b)(4)(B) for a consultation expert is circumscribed by the need to show exceptional circumstances. Under *Pinkett* there appears to be more discretion and an emphasis on

"interests of fairness" when considering the use of an opponent's expert at trial. *Pinkett*, 567 A.2d at 860.

■ Plaintiff cites *Sims v. Zayre Corp.*, Del.Super., C.A.No. 88C–DE–211, Gebelein, J. (May 8, 1990) as support for his ability to call Dr. Sarin as its witness at trial (or for a trial deposition). However, the doctor who performed the independent examination in *Sims* did not object to being so utilized. Should the expert's willingness or unwillingness to testify for the opposing party be determinative?

The interest of fairness could be read to imply that the expert's views should be given some consideration. *Cf. Cogdell v. Brown*, 220 N.J.Super. 330, 531 A.2d 1379, 1381 (1987); *Fenlon*, 506 A.2d 319 ("[t]he expert's desire not to testify ... [is] immaterial". *Id.* at 322). In *Schmidt* and *Starkey*, this Court gave consideration to the expert's objection to testifying for the opposing party. Thus, there is precedent in Delaware for recognizing the expert's wishes. The Court's research in connection with this opinion would indicate Delaware may be unique in that regard. In *Pinkett*, the Supreme Court cited *Fitzpatrick v. Holiday Inns, Inc.*, D.C.E.D.Pa., 507 F.Supp. 979 (1981), where plaintiff wanted to call as a trial witness a defense "IME" physician. The defendant objected. In the "interests of fairness", the court permitted (compelled) the expert to testify. Dr. Sarin was employed by the defense. In that sense, he is not performing an "independent" examination. Compare D.R.E. 614(a). The examination is indepen-

dent, at least, in that it is independent of the treating physician.

There is some inference by the ruling in *Pinkett* that the rulings in *Schmidt* and *Starkey* may need to be relaxed or refined. *Cf. Horne v. Kent General Hospital, Inc.*, Del.Super., C.A.No. 85C–AP–29, Bifferato, J. (August 28, 1990).

■ The "interests of fairness" include whether the objecting expert is in possession of unique facts, whether the expert is uniquely positioned,[5] whether plaintiff has relied upon a report in pretrial preparation, the search for the truth and/or other criteria.[6] Further, in this case, the defendants never have listed Dr. Sarin as a trial witness. The plaintiff has not shown or even hinted he is unable to prove what he would call Dr. Sarin to say or that Dr. Sarin possesses unique knowledge as a result of his involvement.[7]

■ The Court shares, to a degree, plaintiff's fear that defendants will hereafter seek out doctors to perform "independent" medical examinations who only agree at the beginning not to testify for the opposing party.[8] The interests of fairness will not allow this Court to slavishly follow such arrangements. Further, if abused, such arrangements will be ignored and sanctions considered.

In addition, even though the expert's testimony has been barred, if the defendant's testifying expert saw the consultation expert's report, that report could possibly be the subject of cross-examination, at the very least. D.R.E. 703 and 705.

---

5. See *e.g., Cogdell*, 531 A.2d 1379. Plaintiffs malpractice experts were from outside New Jersey, the defense expert plaintiff wanted to call was a New Jersey doctor with significant credentials. *Id.* at 1382.

6. One commentator has suggested that the federal rules of evidence be amended to require that the party seeking to use the other side's consultation expert establish a "reasonable need". Kathleen Michaela Brennan, Note, *Must the Show Go On? Defining When One Party May Call or Compel an Opposing Party's Consultative Expert to Testify*, 78 Minn.L.Rev. 1191 (1994).

7. Another consideration is that the trial judge, if Dr. Sarin were to testify, could prohibit, under

D.R.E. 403, Dr. Sarin being questioned about the identity of the party who hired him to examine the plaintiff. While another doctor's testimony may bolster the plaintiff's own doctor, its value is diminished by a possible D.R.E. 403 ruling. However, it should be noted that such a ruling is not determinative in and of itself of whether Dr. Sarin can be compelled to testify.

8. Parties who utilize experts, particularly "IME" experts for an examination but who do not produce them at trial and object to their opponent's usage face the risk of an argument to the jury by the opponent that they had the opportunity to present expert testimony of their own but chose not to and to further ask the jury to draw an unfavorable inference from that choice.

Under the circumstances presented in this case, since the plaintiff has not shown "exceptional circumstances" and has not demonstrated how the interests of fairness compel his presence, this Court will not compel Dr. Sarin to attend and answer questions at either of the depositions plaintiff has noticed.[9]

## Guhl

The procedural status of this case is different from that in *Winchester*. Dr. Fink performed an "independent" medical examination on plaintiff Mr. Guhl. While this is a malpractice action, Dr. Fink is not a standard of care expert. He has been listed twice as a testifying expert. He has performed two examinations, although the dates of those examinations do not appear in the record. Plaintiff currently has only a report for the first examination. It is hoped the second report will soon be forthcoming.

On four separate occasions starting on November 11, 1993 and as recently as November 1994, the defendant has listed Dr. Fink as a trial witness. Two of these occasions involved pretrial stipulations signed just before scheduled trials (which were later continued). In its letter first engaging Dr. Fink, the defendant required that Dr. Fink testify only for defendant and not for plaintiff. The defendant is resisting the plaintiff's efforts to use Dr. Fink. The defendant relies upon *Schmidt, supra,* and *Starkey, supra.*

The discretion afforded this Court under *Pinkett* and the interest of fairness lead this Court to conclude that the plaintiffs can call Dr. Fink as their witness. *Fitzpatrick,* 507 F.Supp. 979. As in *Pinkett,* his testimony will be limited to the contents of his reports.

■ It appears Dr. Fink has performed several "independent" medical examinations and was not retained as a consultation expert. His testimony regarding Mr. Guhl's medical status appears to be material. *Cf. McLaughlin,* 514 A.2d 1139. He also has direct testimony concerning a party because of his examinations of Mr. Guhl.

The distinguishing features of this case from Winchester include Dr. Fink being listed four times as a trial expert, a belated objection to his use at (the third projected) trial, his two examinations of Mr. Guhl which indicate a continuum of usage as a testifying expert and the potential for unique testimony.

■ Since this Court has ruled Dr. Fink can be compelled to testify, the issue of the admissibility of who originally hired him becomes more focused, *see* footnote 7, *supra.* The cases on this issue are sharply divided. *Fenlon* would allow it on the issue of credibility. *Id.* 506 A.2d at 323. *Granger,* would prohibit such evidence under an Arizona rule identical to D.R.E. 403. *Id.* 656 P.2d at 1243.

Credibility of experts is often important. There is likewise a real concern that the jury will misinterpret this kind of evidence. This Court does not believe a blanket rule prohibiting such evidence is advisable, particularly because of the presently unknown give-and-take at a trial. However, as a starting point, the evidence of who hired the expert is inadmissible unless events or testimony at the trial lead the trial judge to conclude that such testimony should be admissible.

Any expenses in connection with Dr. Fink's trial appearance are to be borne by plaintiffs, at least initially. The trial judge may or may not impose further conditions.

## CONCLUSION

The motion of plaintiffs William F. Winchester, Jr., *et al.* to compel is **DENIED.** The motion of plaintiffs Thomas and Dana Lee Guhl in *limine* to be able to call Dr. Fink as their witness is **GRANTED.**

---

9. Other events not now present could cause this ruling to change and the Court will not now totally tie the hands of the trial judge.