Timeka GREEN, Plaintiff
Below, Appellant,

v.

ALFRED A.I. duPONT INSTITUTE OF
THE NEMOURS FOUNDATION and
Freeman Miller, M.D., and Gerald A.
Mandell, M.D., Defendants Below, Ap-
pellees.

No. 366, 1999.

Supreme Court of Delaware.

Submitted: June 13, 2000.
Decided: Aug. 9, 2000.
Rehearing Denied Sept. 27, 2000.

pellees. We conclude that it was an abuse of discretion to prevent the use of such evidence at trial when the deposition, at the time it was taken, was intended for use at trial, and the pretrial order acknowledged its potential use by either party. Accordingly, we reverse.

## I.

On August 24, 1992, plaintiff-below Timeka Green ("Green"), then fourteen years of age, was admitted to the Alfred A.I. DuPont Institute of the Nemours Foundation ("the Hospital") with pain in her right hip. Upon X-ray examination, doctors detected a slipped capital femoral epiphysis grade II, a condition where the ball at the top of the femur bone slips from its usual place because of a weakened epiphyseal plate.[1] Freeman Miller, M.D. ("Dr.Miller") oversaw Green's reconstructive surgery that involved inserting a cannulated screw (the "pin") into the epiphyseal plate.

In November 1992, Green returned to the hospital complaining of additional pain in her hip. X-ray examination revealed a re-slippage of Green's right capital femoral epiphysis. On November 27, 1992, Dr. Miller performed additional surgery on Green to correct the problem of hip rotation about the screw. The first pin was removed and replaced with a new pin.

Green contends that the initial "pinning" was misaligned and that post-operative x-rays failed to detect the pin misplacement. As a result, Green claims that she has been required to undergo additional surgery and suffers from permanent hip impairment.

Green filed her initial complaint in this action in August 1994, naming radiologist Gerald Mandell, M.D. ("Dr. Mandell"), Dr. Miller, and the Hospital as defendants.[2]

Fred Barakat, Esquire, Wilmington, Delaware, for Appellant.

Katherine R. Witherspoon, Esquire and Daniel B. Rath, Esquire (argued), Klett Lieber Rooney & Schorling, Wilmington, Delaware and James L. Griffith, Esquire and John P. Halfpenny, Esquire, Klett Lieber Rooney & Schorling, Philadelphia, PA, for Appellees.

Before VEASEY, Chief Justice, WALSH, and HOLLAND, Justices.

WALSH, Justice:

In this appeal from the Superior Court following an adverse jury verdict in a medical malpractice action, the plaintiff-appellant contends that the trial court erred in refusing to permit the presentation at trial of a videotaped deposition of an expert originally retained by the defendants-ap-

1. This condition usually occurs in children ages 10–14 who are overweight. The long-term consequences of the condition include an outwardly turned foot and uneven leg length.

2. The original complaint was dismissed by the Superior Court as "lacking in merit," but this Court reversed and ordered the action reinstated. *Wilson v. Miller,* Del.Supr., No. 81,

At the outset of litigation, the defendants designated as their principal medical expert, Paul Sponseller, M.D. ("Dr. Sponseller"), Chief of Pediatric Orthopedic Surgery at the Johns Hopkins University Hospital. Dr. Sponseller prepared a written report dated August 3, 1998, setting forth his medical opinion concerning the standard of care and Green's medical prognosis.

Trial of the matter was originally scheduled for January 19, 1999. The defendants noticed the videotaped deposition of Dr. Sponseller for January 9, 1999 in Baltimore, anticipating its use at trial due to Dr. Sponseller's unavailability. Although Dr. Sponseller's testimony was generally supportive of the defendants, he made certain significant concessions that could be viewed as critical of Dr. Miller.[3] At the pretrial conference held on January 12, 1999, the signed pretrial stipulation submitted by the parties provided, *inter alia,* "[a]ll parties reserve the right to call witnesses listed by the other parties." Dr. Sponseller was listed as a witness to be called by the defendants.

For reasons not clear from the record, the January scheduled trial was rescheduled and a new trial date of June 7, 1999 was fixed. A second pretrial conference was held on April 19, 1999, and again by stipulation Dr. Sponseller was listed as a defense expert witness. Green also included in her list of experts "Paul Sponseller, M.D. Videotaped deposition of 1/9/99." The defendants had changed counsel following the rescheduling of the January trial, but successor counsel took no exception to Green's designation of Dr. Sponseller as a potential expert witness.

At trial, Green relied principally on the testimony of Michael H. Dawson, M.D. ("Dr. Dawson"), a board certified orthopedic surgeon. Dr. Dawson testified that the defendants failed to meet the standard of care due to: (i) a misdiagnosis; (ii) poor pin placement, angle and fixation; (iii) improper post-surgery instructions about weight-bearing tolerance; (iv) an undetected re-slippage on the x-rays; (v) inaction in correcting the problems of callous formation until two months later at which time the slip was irreducible, requiring additional surgery and resulting in permanent impairment.

On the second day of trial, Green sought to place into evidence certain portions of Dr. Sponseller's deposition. The defendants objected on the grounds that they did not intend to use Dr. Sponseller as an expert either in person or by videotaped deposition and Green's attempted use of the videotaped deposition "is total hearsay." The defendants argued that since Dr. Sponseller was their expert, the deposition could be used only for cross-examination. The Superior Court ultimately ruled that Green could not present any portion of the videotaped deposition and "if you [Green] call him, you're limited to any report he gave in this case." The court further noted that because Dr. Dawson had already testified on behalf of Green as to the standard of care, Dr. Sponseller's testimony was "cumulative." Finally, the court denied Green's request to use Dr. Sponseller's deposition in rebuttal after the defendants had presented evidence through three expert witnesses on the standard of care.[4]

The jury returned a verdict for the defendants finding, in effect, that the defen-

1995, 1995 WL 622407, Walsh, J. (Sept. 22, 1995).

**3.** For example, Dr. Sponseller stated that his standard of care for weight bearing on a post-operative hip was "toe touch" as contrasted with Dr. Miller's "weight bearing to tolerance" approach, which, in Dr. Sponseller's view, can contribute to slippage. Dr. Spon-

seller also opined that he would have reviewed the post-surgery x-rays himself, rather than rely upon the radiologist's report.

**4.** The testimony of Dr. Bernard J. Ostrum, the defendants' expert radiologist, appeared to be inconsistent with the views of Dr. Sponseller concerning the role of the surgeon in using post-operative x-rays.

dants had not deviated from the appropriate standard of medical care. Green sought a new trial, asserting as error the trial court's refusal to permit the use of Dr. Sponseller's testimony. The Superior Court denied the motion for new trial and this appeal followed.

## II.

■ The parties agree that this Court reviews for abuse of discretion both a trial court's evidentiary rulings and its denial of a motion for a new trial. *See Forrest v. State,* Del.Supr., 721 A.2d 1271, 1275 (1999). "Where, as here, the appeal is grounded on allegations that the trial court erred as a matter of law or abused its discretion in certain evidentiary rulings, this Court will first consider whether the specific rulings at issue were correct." *Barriocanal v. Gibbs,* Del.Supr., 697 A.2d 1169, 1171 (1997). If the court finds error or abuse of discretion in the rulings, it must then determine whether the mistakes constituted "significant prejudice so as to have denied the appellant a fair trial." *Eustice v. Rupert,* Del.Supr., 460 A.2d 507, 510 (1983). When the excluded evidence goes to "the very heart" of plaintiffs' case and "might well have affected the outcome" of the trial, the exclusion of the evidence warrants a new trial, even if there was other evidence "of the same general character" or "the rejected evidence was cumulative." *Watts v. Delaware Coach Co.,* Del.Super., 58 A.2d 689, 696 (1948).

## III.

Green contends that the Superior Court abused its discretion in rejecting his effort to present the testimony of Dr. Sponseller because the pretrial stipulation anticipated such use and, in any event, the evidence was relevant and non-cumulative. The defendants counter that the Superior Court properly exercised its discretion in denying Green's attempts to compel the testimony of an opposing party's expert.

Green's initial argument is that the admissibility of Dr. Sponseller's deposition testimony is controlled by the terms of the pretrial stipulation executed by the parties and approved by the court prior to both the scheduled January trial and the actual June trial. It is contended that the pretrial orders became "the law of the case" and bound the trial judge when later confronted with the defendants' objection. The defendants maintain that the pretrial order controlled only the question of whether Green could use Dr. Sponseller's deposition in the event he was called as a witness by defendants at trial. They argue that once they advised the court on the second day of trial that Dr. Sponseller was unavailable and that they did not intend to introduce his videotaped deposition, the issue was controlled by general case law, not by the pretrial stipulation.

Superior Court Civil Rule 16(e) provides, that a pretrial order "shall control the subsequent course of the action unless modified by a subsequent order ... to prevent manifest injustice." This Court has upheld a variation in the presentation of the evidence under an abuse of discretion standard where the correction of a typographical error in the report of a party's expert "unfairly surprised" the opposing party on the eve of trial and altered plaintiff's theory of liability. *McLain v. General Motors Corp.,* Del.Supr., 569 A.2d 579, 582 (1990). Federal courts, under the counterpart to Rule 16(e), have applied a four-factor test in assessing whether to permit a party to depart from its pretrial submissions. These factors require a trial court to consider:

(1) the prejudice or surprise in fact of the party against whom the proffered documents would have been submitted;

(2) the ability of the party to cure the prejudice;

(3) the extent to which waiver of the rule against admission of unlisted documents would disrupt the orderly and efficient trial of the case or of other cases in the court; and

(4) bad faith and willfulness in failing to comply with the court's order.

*Smith v. Rowe,* 7th Cir., 761 F.2d 360, 365 (1985).

This case does not present the variance problem that was of concern in either *McLain* or *Smith.* Here, neither party sought to introduce new evidence, and the trial judge, in approving the pretrial stipulation, did not rule that Green had an unqualified right to call Dr. Sponseller as a witness or use his videotaped deposition. At the time of the first pretrial conference, it was clearly the defendants' intention to use Dr. Sponseller's deposition, and they apparently anticipated that Green would also make use of it. That "understanding" was reincorporated in the second pretrial order, but the defendants' change of position at trial required the court to focus on their contention that Dr. Sponseller could not be called as a witness through deposition if they did not use him as an expert witness.

Even though the pretrial stipulation is not determinative, its terms should have guided the trial court in weighing the interests of fairness in ruling upon the defendants' objection at trial. If Green had not listed Dr. Sponseller in the pretrial order but later sought permission to use the videotaped testimony, she would be allowed to add Dr. Sponseller if she could satisfy the "manifest injustice" standard, for which the four factors are persuasive authority under a Rule 16(e) analysis. Moreover, in denying Green's repeated motions to use Dr. Sponseller's videotape, the trial judge implied that Green failed to give adequate notice to the defense.

In sum, while the trial court did not commit legal error by failing to rule that the final pretrial order permitted Green to use Dr. Sponseller's testimony through his trial deposition, it nonetheless failed to recognize the significance of the parties' anticipation of the possible use by Green of the defendants' expert testimony already secured in lieu of a trial appearance. Thus, the stipulation has a bearing on the issue of whether the defendants were either surprised or prejudiced by Green's attempt to use Dr. Sponseller's deposition.

## IV.

Defendants' position at trial and reasserted on appeal is that Dr. Sponseller was "their witness" whose testimony could not be appropriated by another party through compulsion. In *Pinkett v. Brittingham,* Del.Supr., 567 A.2d 858 (1989), this Court examined the limits on compelled expert testimony in the context of a medical examination conducted pursuant to Superior Court Civil Rule 35. Under that rule, a party who submits to a physical examination at the request of another party is entitled to receive a report of the findings and conclusions of the examining physician. *See* Super Ct. Civ. R. 35(b). In *Pinkett,* the trial court permitted the plaintiff, as the examined party, to call the examining physician as an expert medical witness at trial over the objection of the defendant that such compulsion interfered with the attorney-client privilege and created ethical concerns for the physician. 567 A.2d at 860. This Court upheld that ruling as a proper exercise of discretion given the expert's willingness to testify and the underlying purpose of Rule 35 to encourage the free exchange of medical reports. *See id.*

■ The defendants seek to limit the holding in *Pinkett* by emphasizing the fact that Dr. Sponseller was not an independent examiner and did not agree to testify for the plaintiff. But the risk of compulsion, a concern in *Pinkett,* is not a factor here. Indeed, at the beginning of the

videotaped deposition of Dr. Sponseller, the defendants' attorney noted: "[w]e should probably tell the jury that we are videotaping your testimony because you were unavailable to come up to Wilmington for the trial beginning January 19." That statement reflects an understanding, shared by the parties as well as the expert, that the deposition was to be shown to a jury who would give it the same weight as live testimony. Nor can defendant assert any claim of unfairness in the effort by Green to use portions of a deposition without prior use of that deposition by the party who took it. Even though the defendants, at the eleventh hour, decided not to present Dr. Sponseller's deposition, they entered into two pretrial stipulations that recited the availability of the deposition for use by either side at trial.[5]

■ We are also not persuaded that the Superior Court's rejection of the use by Green of Dr. Sponseller's deposition can be sustained on the ground that such testimony was cumulative on the standard of care issue. While a trial judge may limit a party's presentation of evidence on the ground that it is cumulative, such authority should be exercised sparingly so as not to deprive a litigant of the right to manage the presentation of her evidence.

■ A review of Dr. Sponseller's deposition reveals information that would have been material to Green's case-in-chief as well as in rebuttal. In cross-examination of Green's single expert witness, and emphasized in summation, the defendants were critical of Green's lack of expert testimony by a radiologist to support its standard of care claim. In his deposition, however, Dr. Sponseller testified extensively about x-rays at the prompting of the defense and the extent the interpretation of those x-rays related to the standard of care. While Dr. Sponseller also testified generally in support of the defendants' treatment of Green, portions of his testimony conceded information clearly helpful to Green.

■ Finally, the prejudice that Green experienced and the impact on her presentation by the ruling excluding her use of Dr. Sponseller's deposition is manifest. For at least six months before the actual trial, Green's counsel obviously relied on the understanding that he would be permitted to use Dr. Sponseller's deposition at trial. Even after the defendants had retained a new expert, before the second pretrial conference, the pretrial stipulation reflected permission to use Dr. Sponseller's testimony. It was only on the second day of trial when Green attempted to present portions of the deposition that an objection was made. At that juncture, there was no time available for Green to secure alternate expert testimony, and, indeed, any effort to do so could have been rejected as late disclosure of an expert witness. Under the circumstances, the Superior Court should not have prevented the use of Dr. Sponseller's deposition in Green's case-in-chief—an error compounded when Green was further prevented from using Dr. Sponseller's deposition in rebuttal. The combined rulings represent an abuse of discretion. In view of the obvious impact on Green's ability to present evidence of medical malpractice, we must reverse.[6]

The judgment of the Superior Court denying plaintiff's motion for a new trial is

5. Dr. Sponseller's agreement to be deposed and permit his testimony to be presented at trial distinguishes this case from those situations in which a party seeks to depose, for possible use at trial, an opposing party's consultative expert. *See e.g., Winchester v. Hertrich,* Del.Super., 658 A.2d 1016 (1995).

6. We believe that the above discussion concerning the pretrial stipulation renders moot Green's additional contention that Dr. Sponseller's deposition testimony should also have been admitted under Superior Court Civil Rule 32(a)(3).

REVERSED and this matter is RE-MANDED to the Superior Court for a new trial.