# SUPERIOR COURT
## of the
## STATE OF DELAWARE

Jeffrey J Clark
Resident Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2111

Mr. Khaled Fardjallah
117 Stature Drive
Newark, DE 19713

Mr. Phillip M. Casale, Esquire
Wharton Levin
300 Delaware Ave., Suite 1110
P.O. Box 1155
Wilmington, DE 19899

Submitted: August 29, 2025
Decided: September 24, 2025

**RE: *Khaled Fardjallah v. Christiana Hospital, et al.,*
*C.A. No. N23C-05-001 JJC***

Dear Mr. Fardjallah and Mr. Casale:

This letter provides the Court's decision resolving summary judgment motions filed by Dr. Maria Shah, Mr. Michael Schuh, and Christiana Hospital (hereinafter, collectively "Defendants").[1]  For the reasons to follow, the summary judgment record contains no likely admissible medical expert evidence that could support Mr. Fardjallah's burden at trial.  As a result, Defendants' motions for summary judgment must be granted.

---

[1] The complaint names "Christiana Hospital" as a defendant. D.I. 2, at 1.  Defendants contend in their Answer that Christiana Hospital is not a legal entity, and that Christiana Care Health Services, Inc. is the proper defendant. D.I. 15, at 1 n.1.  The Defendants summary judgment motions do not address the issue of proper party, so the Court does not address it.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts to follow are those in the summary judgment record read in the light most favorable to Mr. Fardjallah. Mr. Fardjallah was admitted to Christiana Hospital for approximately twelve days in 2021 for COVID-19 acquired pneumonia and acute hypoxic respiratory failure.[2] During his hospitalization, hospital staff inserted an IV in the flexor region of his right hand and wrist. At some point, he began to experience pain and swelling at the site of the insertion. His attending physician, Dr. Maria Shah, discharged him on November 3, 2021. The doctor prescribed him a zinc topical cream for the site for use at home.

The pain and swelling persisted, however. Mr. Fardjallah followed up with his family physician and later returned to Christiana Hospital's emergency room where Michael Schuh, a physician's assistant, attended him on November 6th. Mr. Schuh examined, treated, and discharged him with the diagnosis of right-hand cellulitis and prescribed him oral antibiotics. The condition worsened, however, and Mr. Fardjallah was treated by several other providers through late January 2022.[3]

Mr. Fardjallah now sues the Defendants in medical negligence.[4] Specifically, he contends that Defendants' treatment of his right hand and wrist from October 28, 2021, through November 6, 2021, fell below the appropriate standard of care and caused him permanent harm.[5]

Defendants have filed three motions for summary judgment in their individual and collective capacities.[6] In their motions, they challenge the sufficiency of Mr. Fardjallah's expert disclosures, which include only two expert medical reports from

---

[2] D.I. 2, at 5.
[3] D.I. 33, Ex. 1 at 1 [Initial Report]. This included a follow up with the family physician, a trip to Abbey Medical Center urgent care, office visits with First State Orthopedics, two MRIs, and a subsequent admission to Christiana Hospital. *Id.* at 3-4, 6; D.I. 61, Ex. D.
[4] D.I. 2.
[5] *Id.* at 5–12.
[6] D.I. 41; D.I. 41; D.I. 43.

2

Dr. Scott D. Olewiler, an infectious disease doctor.[7]  The reports contain no opinion that any specific medical provider or entity breached the standard of care.[8]  Nor do they contain an opinion that any treatment occurring before November 7, 2021—which was the day *after* the defendants' treatment of Mr. Fardjullah ended—failed to meet the standard of care.[9]  Finally, they contain opinions regarding only possible, as opposed to probable, outcomes.[10]

The trial scheduling order set a deadline for Mr. Fardjallah to disclose any expert opinions and the basis for those opinions by August 30, 2024.[11]  The scheduling order also set a discovery cutoff of January 24, 2025.[12]  Defendants' motions allege that Dr. Olewiler's opinions do not support Mr. Fardjallah's medical negligence claims for multiple reasons, and that the expert deadline expired more than one year ago.  For his part, Mr. Fardjallah counters with an emphasis on circumstantial and correlative facts of record that he believes bolster Dr. Olewiler's opinions sufficiently to create genuine issues of material fact.[13]

The Court scheduled oral argument for the motions on August 15, 2025.[14]  Mr. Fardjallah, however, did not appear at the hearing.  He later explained that he had technical difficulties that prevented his attendance.[15]  The Court has since examined the record evidence closely and determined that no oral argument would be necessary.  It nevertheless provided both parties the opportunity to supplement their arguments and the summary judgment record by August 29, 2025.[16]  Mr. Fardjallah

---

[7] D.I. 35, Ex. 1 [Rebuttal Report]; Initial Report, Ex. 1.
[8] Initial Report, at 6; Rebuttal Report, at 1-2.
[9] Rebuttal Report, at 2.
[10] Initial Report, at 6.
[11] D.I. 38, at 1.
[12] *Id.*
[13] D.I. 45, at 2-3; D.I. 46, at 2; D.I. 47, at 2-3.
[14] D.I. 54.
[15] D.I. 58.
[16] D.I. 56.

first supplemented the record with an additional power point summary.[17] He later supplemented the record with additional medical records and argument after the deadline.[18] The Defendants, for their part, presented timely supplemental argument in letter form.[19] None of the supplemental submissions demonstrated the need to reschedule an oral argument.

## STANDARD OF REVIEW

Under Superior Court Rule 56(c), summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[20] Throughout, the Court draws all reasonable inferences in the light most favorable to the non-moving party.[21]

As to the burden of persuasion, the moving party bears the initial burden of demonstrating the absence of genuine issues of material fact.[22] After such a showing, the burden shifts to the non-moving party to identify material issues of fact.[23] Summary judgment then becomes appropriate when the non-moving party fails to identify evidence of record sufficient to support the essential elements of his

---

[17] D.I. 58.

[18] D.I.s 60-75. Although Mr. Fardjallah filed these additional exhibits and arguments after the Court's deadline of September 9, 2025, the Court has nevertheless considered them in light of his *pro se* status to provide him a full opportunity to present all supportive materials. In that September 9th filing, Mr. Fardjallah also contends that the Defendants motions should be stricken for factual inaccuracies and that a defense expert's testimony should be excluded on *Daubert* grounds. All such newly raised issues are rendered moot by this decision granting summary judgment for Defendants.

[19] D.I. 59.

[20] Super. Ct. Civ. R. 56(c).

[21] *Mechell v. Palmer*, 343 A.2d 620, 621 (Del. 1975).

[22] *Brown v. Ocean Drilling & Expl. Co.*, 403 A.2d 1114, 1115 (Del. 1979).

[23] *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

or her case for which he bears the burden.[24]  In other words, a plaintiff must identify sufficient evidence in the summary judgment record to support those essential elements.[25]

## DISCUSSION

To sustain a medical negligence claim in Delaware, a plaintiff must demonstrate by a preponderance of the evidence that a medical provider breached the standard of care, the breach proximately caused harm to the plaintiff, and the plaintiff suffered harm.[26]  Furthermore, the Delaware Medical Negligence Act requires a plaintiff to support his or her claim with expert medical testimony.[27]  Specifically, 18 *Del. C.* § 6853(e) (hereinafter "Subsection (e)") provides in relevant part:

> [n]o liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and as to the causation of the alleged personal injury or death[.]

Thus, before liability can attach at trial, a plaintiff's medical expert must offer expert testimony, to a degree of reasonable medical probability, that explains (1) the applicable standard of care, (2) how the medical provider deviated from that standard of care, and (3) how that deviation caused the plaintiff's injury.[28]  To that end,

---

[24] *Dickenson v. Sopa*, 2013 WL 3482014, at *3 (Del. Super. June 20, 2013) (citing *Burkhart v. Davies*, 602 A.2d 56, 60 (Del. 1991)), *aff'd*, 83 A.3d 737, 2013 WL 6726884 (Del. 2013) (TABLE); *see also Smith v. Haldeman*, 2012 WL 3611895, at *1 (Del. Super. Aug. 21, 2012) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[25] *Roache v. Charney*, 38 A.3d 281, 286 (Del. 2012), *as corrected* (Feb. 28, 2012).

[26] 18 *Del. C.* § 6853; *Jones v. Crawford*, 1 A.3d 299, 302–303 (Del. 2010).

[27] *Vick v. Khan*, 2019 WL 2177114, at *6 (Del. Super. May 17, 2019) (citing 18 *Del. C.* § 6853).

[28] *Id.* (first citing 18 *Del. C.* § 6853; then citing *Russell v. Kanaga*, 571 A.2d 724, 732 (Del. Super. 1990); and then citing *O'Donald v. McConnell*, 858 A.2d 960, 2004 WL 1965034, at *2 (Del. 2004) (TABLE)).  There are three limited exceptions to this requirement.  None apply in this case. *Id.*

Delaware courts routinely grant summary judgment if a plaintiff cannot identify likely admissible evidence in the record that will satisfy these requirements at trial.[29]

Here, Defendants move for summary judgment because Mr. Fardjallah's expert disclosures, on their face, contain gaps regarding all three requirements. That satisfies the Defendants' initial burden which shifts the burden to Mr. Fardjallah to demonstrate a genuine issue of fact regarding those elements. To do so, he relies on (1) Dr. Olewiler's two expert reports, and (2) correlative evidence regarding the timing between Defendants treatment and the significant complications he suffered shortly thereafter.

Under Subsection (e), the Court's focus must remain on the sufficiency of Dr. Olewiler's proffered medical expert testimony. Temporal circumstances cannot overcome the deficiencies in the record given the Medical Negligence Act's requirements. Namely, for several reasons, the expert reports demonstrate on their face that Mr. Fardjullah cannot meet Subsection (e)'s requirements at trial. Those shortfalls must guide the Court's decision.

First and foremost, parties generally cannot compel experts to offer opinion testimony at trial through compulsory process.[30] Rather, a party seeking to present

---

[29] *See, e.g.*, *Burkhart*, 602 A.2d at 59-60 (affirming the Superior Court's grant of summary judgment in favor of defendant medical provider because, *inter alia*, the record unambiguously reflected that the plaintiff's allegations had not and would not be supported by expert medical testimony); *Dickenson*, 2013 WL 3482014, at *4 (granting defendant medical provider's motion for summary judgment because the expert discovery deadline had passed, and the plaintiff had not procured an expert to testify that defendant deviated from the applicable standard of care while performing plaintiff's surgery or that defendant's alleged breach proximately caused plaintiff's injuries); *Valentine v. Mark*, 2004 WL 2419131, at *2–3 (Del. Super. Oct. 20, 2004) (granting defendant medical provider's motion for summary judgment because, *inter alia*, excerpts from the deposition of plaintiff's only expert witness indicated that he was unwilling to testify as to causation in the case), *aff'd*, 873 A.2d 1099 (Del. 2005).

[30] *See Owens v. Silvia*, 838 A.2d 881, 901 (R.I. 2003) ("Absent extraordinary circumstances . . . , a non-party expert cannot be compelled to give opinion testimony against his or her will."); *see also* 98 C.J.S. *Witnesses* § 10 (2025) ("[A]bsent substantial need that cannot be met without undue hardship, or compelling circumstances, . . . an expert witness who has not been engaged but merely

6

expert opinion testimony must retain an expert on a voluntary basis.[31]   Most Delaware cases examining the issue—and refusing to enforce compulsory process on an objecting expert—do so in the context of one party seeking to compel another party's expert to testify.[32]   Those decisions frequently turn, in significant part, on the recognition that to do so would improperly involve imposing a form of involuntary servitude.[33]  That concern will almost universally prevent a litigant from forcing an expert to testify where the expert acquired no factual information independent of his or her efforts to formulate the opinion.

In this case, Dr. Olewiler's initial report recites that he will refuse to testify for Mr. Fardjallah at trial.[34]  To that end, Dr. Olewiler wrote:

> [p]er your request, here is a summary of my opinion of your case. *Please be reminded that I am not able to attend depositions nor court proceedings*.  My opinion is based upon our single office visit of 10/4/22.[35]

This reference, and others in his report, demonstrate that Dr. Olewiler discussed and agreed upon the scope of Dr. Olewiler's services – that of a consultation expert only. Because of (1) Dr. Olewiler's refusal to testify at trial, (2) Mr. Fardjallah's inability to compel him to offer expert opinion testimony, and (3) the expiration of the expert

---

subpoenaed cannot be compelled to give opinion testimony against the expert's will.") (citations omitted).

[31] *Owens*, 838 A.2d at 901.

[32] *See e.g.*, *Drejka v. Hitchens Tire Serv.*, 15 A.3d 1221, 1223 (Del. 2010) (finding no abuse of discretion where the trial court refused to allow plaintiff to compel defendant's expert to testify over the defendant's objection); *Winchester v. Hertrich*, 658 A.2d 1016, 1022 (Del. Super. Feb. 2, 1995) (examining the issue in terms of "consultation experts" and recognizing that they cannot be compelled to testify at trial involuntarily); *c.f. Pinkett v. Brittingham*, 567 A.2d 858, 860 (Del. 1989) (finding no abuse of discretion where the trial court allowed plaintiff to compel defendant's expert to testify, *over the defendant's objection*, because the defendant's expert had performed an independent medical examination *and the expert agreed to testify*).

[33] *See Winchester*, 658 A.2d at 1020.

[34] Initial Report, at 1.

[35] *Id*. (emphasis added).  Dr. Olewiler also reemphasized his unwillingness to testify at multiple other locations in that report.

deadline more than a year earlier leaves no available expert testimony to meet Subsection (e)'s requirements. Consequently, Mr. Fardjallah does not meet his burden on summary judgment.

Second, Dr. Olewiler's two reports provide no opinion that one or more of the defendants breached the standard of care. Rather, he opines only that "proper medical care was not rendered."[36] In other words, Dr. Olewiler's reports do not address *any* of the Defendants by name or express an opinion as to how a designated defendant breached the standard of care.

Third, in Dr. Olewiler's second report, he opines that the treatment provided to Mr. Fardjallah *prior to November 7, 2021*—which includes all of the treatment provided by the named defendants—constituted "reasonable care."[37] To this end, Dr. Olewiler's opinion actually insulates—as opposed to incriminates—the individuals and entities Mr. Fardjallah sued.

Fourth and finally, as to causation, Dr. Olewiler's reports frame his opinion in terms of possible, rather than probable, outcomes. Namely, Dr. Olewiler opines that Mr. Fardjallah "*could* have preserved the function of his right hand," had he been attended to in a timelier fashion.[38] This falls short of a plaintiff's obligation in a medical negligence action to present expert testimony to a reasonable degree of medical probability that a defendant's alleged negligence caused the plaintiff's injuries.[39] On this record, there is no likely admissible evidence that demonstrates

---

[36] *Id.*

[37] Rebuttal Report, at 2 ("**Prior to 11/7**, initial care . . . was reasonable care. . . . My greater concern is for the opportunities that were missed AFTER 11/2/21.") (emphasis and capitalization in original).

[38] Initial Report, at 1 (emphasis added); *see also id*. at 6 ("It does appear that the several opportunities to intervene, *could* have yielded a better long-term outcome. [Proper care rendered *after 11/7/21*] *may* have preserved function of the hand.") (emphasis added).

[39] The Delaware Supreme Court has consistently recognized that "when an expert offers a medical opinion it should be stated in terms of 'a reasonable medical probability' or 'a reasonable medical certainty[.]'" *Mammarella v. Evantash*, 93 A.3d 629, 635 (Del. 2014) (quoting *O'Riley v.*

8

Mr. Fardjallah's ability at trial to meet this additional element of a medical negligence claim.

## CONCLUSION

For these reasons, Defendants' motions for summary judgment are **GRANTED.** The summary judgment record contains no likely admissible expert medical testimony to support his medical negligence claims.

**IT IS SO ORDERED**.

Very truly yours,

/s/Jeffrey J Clark
Resident Judge

*U.S. Postal Service, Email, and Via File & ServeExpress*

---

*Rogers*, 69 A.3d 1007, 1011 (Del. 2013)); *see also Floray v. State*, 720 A.2d 1132, 1136 (Del. 1998) (same). The Delaware Supreme Court has also expressed on numerous occasions that in medical negligence cases where a plaintiff's claim involves bodily injury, causation between the medical provider's alleged negligent conduct and the plaintiff's alleged injury "*must* be proven by the *direct testimony* of a competent medical expert." *Roache*, 38 A.3d at 286 (emphasis added) (quoting *Rayfield v. Power*, 840 A.2d 642, 2003 WL 22873037, at *1 (Del. Dec. 2, 2003) (TABLE)); *see also Money v. Manville Corp. Asbestos Disease Comp. Tr. Fund*, 596 A.2d 1372, 1376 (Del. 1991) (same).